## MAT LYNCH v. THE STATE.
### *No. 101. Decided April 19.*

1. **Theft of Horse—Charge of Court—Purchase.**—On a trial for theft of a horse, where the court instructed the jury, " if you find from the evidence that the defendant bought the animal mentioned in the indictment from one B., you will acquit the defendant, and this although you may believe that B. acquired the animal unlawfully," and it was objected that the charge was insufficient in not adding, in effect, that defendant should be acquitted under the facts stated, even though he might have known that B. had acquired the animal unlawfully, at the time of his purchase: *Held*, the instruction was sufficient, and not obnoxious to the objection that it authorized a conviction in case defendant knew that B.'s possession was unlawful. On the contrary, it is beyond question the instruction given authorized an acquittal though defendant had knowledge that B. had stolen the animal. SIMKINS, Judge, dissenting.

2. **Same—Words, how Understood—"Purchase," "Bought."**—By article 10, Penal Code, it is expressly provided that words are to be taken and construed in the sense in which they are understood in common language, taking into consideration the context and subject matter relative to which they are employed. See this rule applied to the words " purchase" and " bought" in a charge of court relative to a transaction where defendant knew he was acquiring an animal from one who had stolen it.

APPEAL from the District Court of Lavaca. Tried below before Hon. M. KENNON, Special Judge.

Appellant was indicted for the theft of a horse from one Vince Janok, and at his trial was convicted, his punishment being assessed at five years in the penitentiary.

Under instruction of Judge SIMKINS, in his dissenting opinion, the evidence is reproduced in full, as follows, viz.:

Vince Janok testified: I reside in Lavaca County, Texas, about four miles west of Hallettsville. I lost the animal described in the indictment on the 24th day of January, 1892. The animal was a little black mare, about three years old, and branded in my brand. I raised the animal. I put the said mare, together with my work-horses, in my pasture, containing about four acres, on Saturday evening, and on Monday morning thereafter I missed her. I noticed on Monday morning where my fence had been broken or pulled down. My fence was not down on Sunday evening prior to said Monday. The mare was taken on Sunday night. No one had my consent to take said mare. She was taken from my pasture in Lavaca County. I recovered my mare on Wednesday of the same week from the sheriff of Lavaca County. He had her in the town of Hallettsville. My brand had been changed on said mare.

Cross-examined: I did not see my mare from the time I put her in my pasture on Saturday evening until I recovered her from the sheriff. Think she was taken on Sunday night.

A. Leslie testified: I reside about eight miles south of Hallettsville. On the night of the day mentioned in the indictment some one came by my house about 11 o'clock and inquired the way to John Ponton's; the party was riding a light-colored horse and leading a dark-colored horse. I did not know who the party was.

John Ponton testified: I reside in Lavaca County, Texas, about ten miles south of Hallettsville. The defendant came to my house Monday morning following the day said mare is said to have been stolen. He reached my place about 10 o'clock a. m. of said Monday. He was riding a dun horse and was leading a small black mare, apparently fresh branded. He said he was coming from Smothers' ranch and got lost, and wanted to leave the mare in my possession for a few days. He never returned. J. T. Houchin, sheriff of Lavaca County, came and got the mare on the following Wednesday morning. The Smothers ranch is about ten miles south of my place and about twenty south of Hallettsville.

John T. Houchins testified: I am sheriff of Lavaca County, and have been for several years. On Monday, the day after the mare was said to have been stolen, Vince Janok came into town and told me about his mare being stolen from his pasture. On the following Wednesday I recovered the mare. I got the mare from John Ponton's pasture. The brand had been freshly blotched. I brought the mare to town and sent for Janok (the owner). While I had the mare I took the defendant, Mat Lynch, and showed the mare to him and asked him if he knew anything about the mare. He told me he would not say anything. I then asked him where he got the mare, and he refused to say. He refused to make any statement in regard to the mare. On Sunday morning, the day the

mare was said to have been stolen, I saw the defendant, Mat Lynch, leaving town. He was riding a dun horse. He was not going in the direction of Smothers' ranch. I think Smothers' ranch is twenty or twenty-five miles from the town of Hallettsville.

Pat Wiley, for defendant, testified: I reside in Lavaca County. Have lived in Lavaca County about eight years. I reside about five miles northwest from Hallettsville. On Sunday, the day the defendant is charged with the theft of the horse described in the indictment, I went from my house to my mother-in-law's, Mrs. Thigpen; the road runs near Mr. John McElroy's. I returned home late Sunday evening. I got to McElroy's place about sundown, and McElroy and defendant were on the gallery of McElroy's house, and invited me in; to stop and get down. I did so, and went in and remained there for sometime. A little after dark Henry Butler came up to the gate and called the defendant out. I heard the defendant say, "Is that the animal?" and Henry Butler replied, "Yes." The defendant said, "The animal is not worth $15;" and after some talking, the defendant offered Henry Butler $10 for the animal, and Butler accepted. Myself and John McElroy went out to where they were talking immediately after they began to talk. I saw the defendant hand Butler five silver dollars and a bill, said at the time by the defendant to be a $5 bill. I left a few minutes after the trade, and when I left Butler, defendant, and John McElroy were all at McElroy's house. I have frequently stopped at McElroy's house when passing on the way to Mrs. Thigpen's, my mother-in-law's. I was only subpœnaed two days before this case was called for trial. I remember the time, because the defendant was arrested a few days after that time for the theft of a horse. The animal defendant purchased from Butler was black, and Butler said it was a mare. Henry Butler is dead; died since last August court. I knew that defendant bought the animal all the time. I never told any one what I knew. Don't know why I did not tell.

Frank Lynch, for defendant, testified: I am a brother of defendant. I requested Messrs. Ellis & Allen, attorneys, to have Pat Wiley subpœnaed before the last August court.

J. P. Ellis testified: I am county attorney. Henry Butler is dead; was killed in October, 1892.

The defendant introduced subpœnas in this cause, showing that Henry Butler and John McElroy had been duly summoned as witnesses in this cause immediately after the filing of the indictment against the defendant in this case.

Frank Williams testified: I am deputy sheriff of Lavaca County. I know John McElroy. I saw him this morning about two miles from Hallettsville, and served him with process in another case. If an attachment had been issued for him in this case I could have brought him into court.

No briefs for either party have come to the hands of the Reporter.

HURT, PRESIDING JUDGE.—There is but one question that need be considered. There was evidence tending to prove that appellant purchased the mare from one Butler. Applying the law to this evidence, the court charged the jury: "In the taking of property, in order to constitute theft, it must be taken fraudulently. Therefore, if you find from the evidence that defendant bought the animal mentioned in the indictment from one Butler, you will acquit the defendant; and this, although you may believe that Butler acquired the animal unlawfully." Counsel for appellant objected to this charge, because "the latter part of the charge is not full and complete and sufficient, in this: It fails to instruct the jury that defendant would not be guilty, although they may believe that Butler acquired the animal unlawfully, and that the same was known to defendant at the time of said purchase."

We have frequently held, and still hold, under a charge of theft, there being proof that the accused was in possession of the stolen property recently after the theft, and the accused relying upon proof of purchase, or that he obtained, in any manner, possession of the property from another, to instruct the jury, that they must believe that the purchase or acquisition from another must be in good faith, was wrong. But it does not follow, because we have thus held in relation to such charge, that a charge under such a state of case would be erroneous because it failed, in terms, to instruct the jury, that if they believed that the accused bought the property knowing it to have been stolen they should acquit. The vice in the charges held by this court to be erroneous was in requiring the jury to believe that the purchase was in good faith, when in law the purchase or acquisition of the property from another would defeat a conviction for theft, whether in good or bad faith. If believed by the jury, it would establish the fact that the accused was not the taker of the property, and hence not guilty of theft.

Now, the charge under discussion requires the jury to acquit appellant if they believe from the evidence that he bought the mare from Butler, though they may believe that Butler had acquired her unlawfully. Acquisition of the mare by theft is certainly unlawful. Therefore, if the jury had believed that Butler had stolen the mare and sold her to appellant, obeying the instructions from the court they would have acquitted the appellant. But they were not told to acquit though he knew Butler had stolen the mare. True. But were they instructed to convict if appellant had knowledge of the theft? They were not, and beyond question, the instruction given authorized an acquittal though defendant had knowledge that Butler had stolen the mare. But it may be contended that the word "bought" implies that the purchaser acquired title, and

as the mare was stolen, and as defendant may have known this, he acquired no title to her, and therefore he did not buy her; that this view of the transaction may have been taken by the jury, and hence the necessity of the instruction desired by appellant. In article 10 of the Penal Code it is said: "Words are to be taken and construed in the sense in which they are understood in common language, taking into consideration the context and subject matter relative to which they are employed." Now, we venture the assertion that there is not one juror in five hundred who would not have used the word "bought" or "purchased" relative to this transaction between appellant and Butler, though appellant may have known that Butler stole the mare.

There is no error in the charge. The judgment is affirmed.

*Affirmed.*

SIMKINS, JUDGE, dissenting.—I can not concur in the decision rendered. I hold that under article 677, Penal Code, requiring the court to distinctly set forth the law applicable to the case, it was the duty of the court to charge the jury, that if they believed defendant had purchased the horse they should acquit defendant, though they might believe when he purchased the horse from Butler defendant *knew* that Butler had stolen it or acquired it unlawfully.

It was not sufficient merely to charge, that if defendant bought the property they should acquit, though Butler may have acquired the horse unlawfully. This charge would readily be understood by the jury as instructing them not to convict if Lynch bought the horse without knowing that Butler had stolen it, for they knew that a man may honestly buy stolen property, even though it has to be surrendered subsequently to the owner. But there are but few average juries who willingly let a man go, apparently, unwhipt of justice who has colluded with a thief and purchased his stolen property. It is seldom explained to the jury, that while the law regards the receiver as bad as the thief, it yet holds the two offenses distinct, and requires an indictment for receiving stolen property before one can be convicted therefor. But it is a common understanding among all the people, that one purchasing property knowing it is stolen, is as guilty as the thief, and without definite and clear instructions they will rarely let a receiver escape. Not only is this the opinion of the average man, but this court has been called upon to reverse many cases where district judges have limited acquittals to purchases *in good faith*. Appellant in this case either stole the horse or bought it *knowing* it was stolen by Butler. There is, in my judgment, little or no proof of the first proposition, but the evidence strongly supports the last. (The Reporter will insert the testimony.) He was convicted of theft because the law was not distinctly and substantially charged, and I think the case should be reversed.